GREGORIO SANTIAGO ET AL., Plaintiffs and Appellants, *v.* RA-MÓN GONZÁLEZ ET AL., Defendants and Appellees.

No. 10139.   Argued November 13, 1950.—Decided December 6, 1950.

Diego O. *Marrero* and *Federico Valladares* for appellants. · *Luis Archilla Laugier, José E. Bosch Roqué,* and *José R. Fournier,* for appellees.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Gregorio Santiago and Luis Díaz filed an injunction against Ramón González and Ramón Espinosa, the latter in his capacity as Mayor of Bayamón. Briefly, they alleged that Gregorio Santiago is owner of a 296-square meter (*sic*) lot in the Santa Cruz Development in Bayamón, where he has erected three houses in one of which codefendant Luis Díaz has a commercial establishment; that right on the street and bounded by plaintiffs' properties, defendant Ramón González has built a frame and concrete house and is building a block fence which when finished will deprive plaintiff Santiago of sufficient light and air and of the right of free traffic through Santa Cruz Street, all of which has been done with the tacit consent and acquiescence of codefendant Espinosa. They requested the issuance of an injunction against defendants directing them to immediately restrain from building the fence and ordering them to destroy that portion of the building which blocks the street.

Defendant Ramón González answered the complaint alleging certain special defenses and denying its essential allegations. Trial was held and the parties offered ample oral and documentary evidence. The court then rendered judgment dismissing the complaint with costs on plaintiffs plus $300.00 for attorney's fees.

Plaintiffs assign seven errors in support of their appeal. The first and fourth errors are substantially that the lower court erred in rendering judgment of dismissal inasmuch as Ramón González and Ramón Espinosa failed to

answer the complaint thereby admitting each and every one of the facts alleged therein and thus establishing a clear conflict with the defenses and allegations of his codefendant Ramón González which was sufficient to consider as proved all the allegations of the complaint and hence to issue the injunction sought. Not a single case has been cited by appellants to convince us that when there are several defendants in an action and default is entered against one or several of them, judgment should be rendered, because of that fact alone, against defendant or defendants who appear for their defense. Likewise, we have been unable to find any case which maintains such principle.[1]

Errors two and three are directed to the weighing of the evidence. This makes it necessary for us to sketch briefly the evidence introduced in the case. Gregorio Santiago, Javier Colmenares, Luis Díaz, Luis Torregrosa Rodríguez, Charles Rommy, Enrique Medina and Mariano Ayala testified for the plaintiffs. Only Attorney José R. Fournier testified for defendants.

*Gregorio Santiago* is one of the plaintiffs and lives in Juan Sánchez Ward in Bayamón, where for 25 years he has had three houses fronting a cross street. The property belonged to Gabriel Guerra,[2] who had some land there and whose construction was stopped because he could not sell lots if he did not build a cross street. Guerra started the development but it would not be accepted unless it had three cross streets which are the ones said development now has. When he bought his lot the cross street was already there. First he made the transactions and after 23 or 24 years the deed was executed. He was requested to give part of his lot for the

---

[1] It does not appear from the record that default was entered against Espinosa. On the contrary it shows that he appeared at the trial and that although he did not file a written answer, nevertheless, he cross-examined the witnesses which he was entitled to do. *Rivera* v. *Goitía,* 70 P.R.R. 29, 32.

[2] The witnesses subsequently refer to Arturo Guerra and the deeds introduced in evidence refer to him.

cross street. He paid by installments. After a year or a year and a half he built a frame house on the lot he had bought and afterwards he made improvements on the rear of the lot facing the cross street. Here defendant Ramón González built a small frame house right on the corner of the cross street. The cement house which he built on the rear of the lot was rented but the tenant left because the lot had no exit. González closed the front to the street as well as the ventilation. The cross street has been there for 24 years. The lot belonging to the witness had two fronts and he made the improvement on the rear about six years ago. The cross street was paved. It ran from Esteban Padilla Street up to the military highway. The cross street belonged to the whole town of Bayamón. He is the same Gregorio Santiago who filed an injunction suit in the District Court of Bayamón against defendant Ramón González. He sued González because the latter closed the entrance to his houses, without leaving any opening and because the latter was the cross street. Luis Díaz is his son-in-law. When the improvement was made the construction of Ramón González had not been erected; he made it afterwards. When the development was transferred to the municipality of Bayamón the cross street was already built.

*Javier Colmenares* is a newspaperman and photographer.[3]

*Luis Díaz* resides on Esteban Padilla Street and owns a small house on a cross street where he has a commercial establishment. He has suffered damages on account of the building which is being erected there. The name of the development is Santa Cruz. Everybody used the cross street to go to the rear of the property and that street has a curb on either side. Ramón González, to whom the municipal government had given the usufruct right, built a frame house on the cross street. Mariano Ayala who bought the cross street from

<hr>

[3] Several photographs are presented in evidence and marked exhibits 2, 3, 4, 5 and 6 for the plaintiffs.

Attorney Fournier, sued Marcos Santiago but abandoned the case. Gregorio Santiago, father-in-law of the witness, has a wooden and concrete construction there facing the cross street.

*Luis Torregrosa Rodríguez* resides on Esteban Padilla Street and knows that said development is named Santa Cruz. Arturo Guerra opened a street on those lands in a development which he built there with a permit of the Department of Health. The street had no name but afterwards the municipal council named it Esteban Padilla. There he bought a 300-meter lot to the right. There was a tract of land between his lot and the one owned by Gregorio Santiago. When Arturo Guerra built the development he left a space on the south for a street. Arturo Guerra told him once that he had given orders to leave a portion of the lot owned by the witness for a street to give access to the lot of the adjoining owner. It was a public place because everybody could go through there. When he was asked, "Was that a tract of land where the street was to be laid out?" he answered: "Yes, a street; . . . and they left about one meter; a gutter was made with a culvert from the corner of my house to said lot . . ." When asked, "Then that land never became a street?" he answered: "It never became a street, it was a project for a a street, as far as I know . . . It never had a name." When asked, "Do you know if the land was kept as a street?" he answered: "I do not know anything about that; no Sir." And "Was it asphalted or with a curb?" and he answered: "No, my portion on the side of Canuto Vargas had sort of a culvert . . ."

*Charles Rommy* is the Acting Head of the Sanitation Bureau of the Department of Health and he has all the documents that the Department had in connection with the Santa Cruz Development. He has its drawing but he does not know which is Esteban Padilla Street. The red lines appearing on the drawing indicate cross streets 10 meters wide. The drawing was presented to the Department of Health by

Arturo Guerra about November 5, 1925. He does not know whether the development was built according to the project. He merely came to bring the documents connected with said development. The Department approved the drawing with the three streets 10 meters wide which are laid out in red.

*Enrique Medina* is Secretary-Auditor of the Municipality of Bayamón and is in charge of the public documents of the same. He knows Santa Cruz Development and he knows that the municipal government approved its drawing by ordinance No. 10 of November 17, 1925.

*Mariano Ayala* had a lot in the Santa Cruz Development which he bought from Attorney Fournier. "It was part of an extension in the lower portion and another portion left by the military highway." It was part of a cross street when he bought it. It has been a street so long as he can remember. As the municipality appeared to be its owner, the witness cancelled the transaction and Attorney Fournier returned the money to him. The lot is an extension of the cross street which runs through Esteban Padilla Street. Santa Cruz Development had three cross streets. Even though he came to that place two years ago, he is 24 years old and was brought up there. During all that time the Santa Cruz Development has had three cross streets. At present there is a house erected on the cross street and the Municipal Government alleges that the land belongs to it. That was always an extension of a cross street, but it was not used as a street until the WPA built it. Anyone who needed to pass, passed through there. That cross street was approximately from 10 to 12 meters wide and from 9 to 10 meters long. It had a fence which had to be destroyed when they started constructing the military highway. It is the same cross street that the witness was going to buy from Attorney Fournier. It has no light poles or sidewalks, only a small curb. When he was going to buy the land Gregorio Santiago was erecting the building on the back part and he brought an unlawful detainer action against him.

The oral evidence of the defendants consisted, as we have already said, exclusively of the testimony of *Attorney José R. Fournier*. He testified that he is an attorney and notary and resides in Bayamón; that he owns several properties in that town and that he sold to Ramón González a lot located on Esteban Padilla Street; that he purchased that lot from Ernestina Guerra, daughter of Arturo Guerra and married to Celestino Castro; that said lot is bounded on the front by Esteban Padilla Street and on the right going in with Gregorio Santiago's property; that it is the lot involved in the suit; that there has never been a street there; that he has seen the construction of González and that they are within the limits of the lot that he sold him; that the whole property belonged to Arturo Guerra and when he died it was inherited by Ernestina Guerra, his recognized natural daughter; that since Ernestina's husband was an engineer, they continued the development commenced by Arturo Guerra; that then they continued selling lots and he bought from them the lot involved in the suit, executing the deed before Notary Manuel Torres Reyes; that said lot was segregated from a larger area and it was recorded in the registry in his name; that the lot was never granted by Guerra to the municipality and he is sure of this because he was attorney for the heirs of Guerra; that the sale of the lot to Mariano Ayala was cancelled and finally he sold it to Ramón González because it was first leased to González, who erected a small house on it without his consent; that when he bought the lot there was no sign of any street there and that it could never be considered a street since it was the entrance to the Luiñas' farm.

In addition to the oral testimony, as we have already indicated, the parties presented documentary evidence. That of the plaintiffs consisted of: a copy of the public deed (exhibit 1) executed on December 17, 1927, by virtue of which Arturo Guerra Acosta sold Gregorio Santiago a 286-square

meter lot;[4] the five photographs (exhibits 2 to 6) which we have already mentioned in note 3; a copy of the proceeding of unlawful detainer at sufferance (exhibit 7) filed by Mariano Ayala against Marcos Santiago and the amended answer thereto; the permit granted (exhibit 8) by the Department of Health to Marcos Santiago to construct a mirador on Esteban Padilla Street; two documents (exhibits 9 and 10) connected with the same construction; two blueprints (exhibits 11 and 12), whose originals have been sent up to this Court;[5] a letter addressed by Arturo Guerra to the Commissioner of Health on December 30, 1930 (exhibit 13), in which he states that on November 27, 1925 he received a letter from said department granting him permission to urbanize a parcel of land located in Santa Cruz Ward in Bayamón, that he has finished the works of the same and he requests that an engineer be appointed to receive the constructions; a certified copy of the ordinance passed by the municipal council of Bayamón on November 17, 1925 (exhibit 14) approving the drawings for the development of certain lands which are

---

[4] It is stated in this deed that Arturo Guerra Acosta is the owner of a 14.20-cuerdas farm in the Juan Sánchez ward within the municipality of Bayamón; that he acquired it by judicial sale and that it is recorded in the Registry of Property; and that *from that land he segregates and sells to Gregorio Santiago a lot measuring 11 meters in front by 26 meters deep, bounded on the south by a cross street in project.* (Italics ours.)

[5] One of these, exhibit 12, is a drawing of the project for Santa Cruz Development, filed in the Department of Health in November, 1925. A street called Santa Cruz appears in this drawing and on both sides of the same certain lots are laid out. Those on the right are marked from 1 to 12 and those on the left from 63 to 120. The paper of the drawing, as we have said, is blue, and the said street as well as the layout and the numbers which identify the lots are in white. However, certain red lines are superimposed on the white lines marking lots Nos. 62 and 120; 46 and 104; and 25 and 83. Then, there are three arrows and the words "streets 10 meters wide" in black ink to indicate that the lots which appear within the lines made with red pencil represent the cross streets to Santa Cruz 10 meters wide.

Exhibit 11 is a drawing for the construction of a frame house 12 × 14 feet.

located in the extension of Santa Cruz Street in said town;[6] a certified copy of an ordinance (exhibit 15) approved by the Municipality of Bayamón on November 29, 1944, by virtue of which the latter grants to Ramón González the usufruct of a lot in the lands of the 'Guerra' Development, bounded on the north by lots owned by Marcos Santiago and Gregorio Santiago;[7] a true copy of the deed of sale of a 220-square meter lot, located in Esteban Padilla Street in Bayamón *bounded on the north by the lot owned by Gregorio Santiago*, executed by Attorney Fournier in favor of Mariano Ayala (exhibit 16); and a copy of the deed of sale and mortgage (exhibit 17) of a lot on said street *bounded on the north by Gregorio San- tiago*, executed on February 8, 1947 by Attorney Fournier and wife in favor of defendant Ramón González.

The documentary evidence of the defendants consisted of a copy of an action of revendication (exhibit 1) filed in the Municipal Court of Bayamón by Ramón González, defendant herein, against Marcos Santiago and Guillermina Santiago and against Luis Díaz, plaintiff herein, in connection with a piece of land of 44.30 square meters of the lot which González purchased from Attorney Fournier and wife; of a copy of the complaint (exhibit 2) introduced in the petition for in-

---

[6] In the second Section of said ordinance it is said that Arturo Guerra is obliged to stone pave the whole length *of the street* which he intends to urbanize and *that the streets* will be 10 meters wide; and in the third Section that Guerra will be obliged to install the electric lighting *on said street.* (Italics ours.) Judging from the ordinance it is not clear in effect whether the development had one street or several streets when the drawing was approved.

[7] It is said in that ordinance that "the lot is part of and is segregated from the lands of the Guerra development belonging to the municipality." Cf. *Saldaña* v. *Municipal Council of San Juan*, 15 P.R.R. 36.

[8] In said possessory injunction Gregorio Santiago, plaintiff herein, after having stated that he is the owner of the lot on Esteban Padilla Street which he describes and that about 1941 he erected a reinforced concrete room with an exit towards the south, alleges that said exit or right of way consists in *"a path of about one meter wide by 5 meters long which extends to the south"* and that defendant constructed a zinc and wood fence about 4 or 5 weeks ago which extends from the Military Road to plaintiff's lot

junction to recover possession filed by Gregorio Santiago against Ramón González, plaintiff and defendant herein, respectively;[8] and a copy (exhibit 3) of the judgment rendered therein.

In addition to all that the court made an inspection in the presence of the parties, their attorneys, the Clerk, the marshal and the stenographer and stated its conclusions in writing.[9]

Considering all the evidence submitted to it as well as the inspection which it made,[10] the court as we have already said, rendered judgment dismissing the complaint. We have repeatedly and carefully read the evidence. We. have summarized it above. And the whole evidence read together with the minutes of the inspection does not convince us that its weighing was manifestly wrong or that the judgment should consequently be reversed. *Camacho* v. *Compañía Popular de Transporte*, 69 P.R.R. 675, 680; *Oliver et al.* v. *González et ux.*, 37 P.R.R. 868:

██ The fifth error charges that the lower court erred in referring in its opinion to an injunction proceeding to recover possession. The error does not exist. The complaint filed in said proceeding was introduced in evidence and several witnesses mentioned it. This being so, even though

which closes the path from his home up to said Military Road. (Italics ours.)

[9] In the third paragraph of the Minutes of the inspection, the court says:

"There is no apparent indication of any street between the yellow house of defendant and the frame house covered with zinc belonging to the plaintiff." Then at the end of paragraph 6 of the Minutes it is stated:

"On the spot where we are standing, in the Military Road there is no apparent sign of any street leading to the Military Road (and) nor on the lands of the Housing Authority."

[10] Appellants also assail the findings of the lower court in the Minutes of the inspection. They were present during said inspection and it does not appear from the record that they requested any amendment or explanation to said findings. It is in this Court where for the first time they assail said findings. *Cf. Lampón* v. *Línea Romero*, 60 P.R.R. 207, 208; *Figueroa* v. *Vives & Maxan*, 46 P.R.R. 233, 235; *Lamboy* v. *Solo et al.*, 29 P.R.R. 843, 844.

in that kind of suits only the possession itself is settled, the court could refer to it in its opinion. On the other hand, be it as it may, the appeal is taken from the judgment and not from the reasoning of the opinion. *Bird* v. *Bird*, 69 P.R.R. 342, 346.

■ Appellants likewise charge the lower court with having acted under passion, prejudice and partiality. They start the discussion of this error by alleging that the trial judge set aside *sua sponte* the restraining order issued by an acting judge who sat in the same court. They are mistaken. Said order was not rendered *sua sponte*. On the contrary the record shows a motion of codefendant Ramón González requesting the dismissal of the order, which was amply discussed by the parties at the commencement of the trial and thereafter the court set aside the restraining order.

In discussing the same error, appellants also refer to the incident between one of their attorneys and the trial judge when the former requested the opportunity to introduce in evidence a literal certificate from the registry of property in connection with the title obtained by Attorney Fournier of the land in question. We need not refer to this incident in detail. It will be sufficient to say that the court finally granted to the parties all the time necessary to examine the protocols of notary Torres Reyes; that they did so; that on their return Attorney Fournier informed the court that they had gone to the office of said attorney, that they had examined his protocol corresponding to the year 1943 and that deed No. 4 in connection with the lot sold to him by Celestino Castro and Ernestina Guerra was found there; that it was a segregation from a larger lot which was recorded; that the court then asked the plaintiffs: "What does the other party say?" and that then they replied through their attorney: "Yes Sir, it is alright". Under these circumstances it cannot be said that as a result of said incident the judge rendered judgment moved by passion, prejudice or partiality.

■ In discussing this error plaintiffs also maintain that the judge decided the case hastily, since he rendered judgment the day after the case was submitted. If the judge who rendered judgment was the person before whom all the oral and documentary evidence was introduced and the person who made the inspection it is not uncommon that he rendered his judgment so promptly since his participation in the case enabled him to do so.

■■ The seventh and last error was that the district court abused its discretion in ordering the plaintiffs to pay $300 for attorney's fees. We have repeatedly held that the imposition of fees on the losing party is discretionary with the trial court and that we shall not interfere with such discretion unless we are shown that it is a clear abuse. Such abuse is not shown here. *Figueroa* v. *Picó*, 69 P.R.R. 372, 376; *Sánchez* v. *Cooperativa Azucarera*, 66 P.R.R. 330, 337; *Sandoval* v. *Simonet*, 62 P.R.R. 382, 387.

The judgment appealed from will be affirmed.

